UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAURA H.,[1]

      Plaintiff,

  v.

MARTIN O'MALLEY,
Commissioner of Social Security,

Case No. 2:22-cv-04523
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the October 2019 application of Plaintiff Laura H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. ("DIB"). Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is before the Court on the Commissioner's motion to remand the action for further fact finding, pursuant to Sentence 4 of 42 U.S.C. § 405(g). *Motion to Remand*, ECF No. 26. Plaintiff opposes the motion, arguing that the matter should be remanded with directions for the granting of benefits. *Response in Opposition*, ECF No. 27. The Commissioner has filed a reply, *Reply*, ECF No. 31, and Plaintiff has filed a surreply, *Surreply*, ECF No. 34. The Court has carefully considered the parties' filings, as well as the entire administrative record. For the reasons that follow, the Court grants the Commissioner's motion,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in Social Security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

reverses the Commissioner's decision, and remands the matter to the Commissioner for further proceedings, including further fact finding.

I.  PROCEDURAL HISTORY

On October 21, 2019, Plaintiff protectively filed her original application for DIB, alleging that she has been disabled since July 21, 2019. R. 156-59. That application was denied initially and upon reconsideration, R. 63-72, 83-92, and Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 93-94. ALJ Marguerite Toland held a hearing on April 13, 2021, at which Plaintiff, accompanied by a non-attorney representative, testified, as did a vocational expert. R. 33-62. In a decision dated September 29, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 21, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 16-28. That decision became final when the Appeals Council declined review on June 16, 2022. R. 1-7.

Plaintiff timely appealed that final decision to this Court pursuant to 42 U.S.C. § 405(g). ECF No. 1.[2] On January 30, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On February 24, 2023, this case was reassigned to the undersigned. ECF No. 12.

---

[2] Plaintiff filed another application for DIB, which was granted on April 1, 2023, with a finding of disability as of September 30, 2021—*i.e.*, the day after the ALJ's September 29, 2021, unfavorable decision on Plaintiff's original application. *Notice*, attached to *Plaintiff's Brief*, ECF No. 20-1. The Court will further address that application later in this *Opinion and Order*.
[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decisions. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

**II.     THE COMMISSIONER'S MOTION TO REMAND**

In her original brief, *Plaintiff's Brief*, ECF No. 20, Plaintiff asked that the decision of the Commissioner be reversed pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that the Court remand the matter to the Commissioner for "reassessment" of Plaintiff's residual functional capacity ("RFC"), of the opinions of Michael Lam, M.D., Howard Goldbas, M.D., and Raymond Briski, M.D., and of Plaintiff's subjective complaints and, if warranted, for new vocational testimony, and to "issue a new decision based on substantial evidence and proper legal standards." *Id*. at PageID# 651. The Commissioner thereafter filed the *Motion to Remand*, ECF No 26, seeking remand of the matter to the Commissioner for further fact finding pursuant to Sentence 4 of 42 U.S.C. § 405(g). In that motion, the Commissioner takes the position

> that additional evaluation of Plaintiff's claim is warranted. The Commissioner agree[s] to remand to obtain medical expert evidence; further consider the opinion evidence in the record pursuant to 20 C.F.R § 404.1520c (including the opinions of Michael Lam, M.D., and the prior administrative medical findings of Howard Goldbas, M.D., and Raymond Briski, M.D.); further consider the claimant's residual functional capacity and whether the use of an assistive device is medically necessary; if necessary obtain supplemental vocational expert evidence; and issue a new decision.

*Motion to Remand*, ECF No. 26, PageID# 694. In her memorandum in opposition to the Commissioner's motion, Plaintiff "does not contest the Commissioner's general admission of error, or that reversal is merited. Rather, she maintains that there is no need to remand this case for further fact finding and particularly to 'obtain medical expert evidence' as the record already contains such evidence which supports an award of benefits." *Response in Opposition*, ECF No. 27, PageID# 708. In short, Plaintiff insists that, because "the record is fully developed, and her entitlement is clear from the record, this Court should remand this case with instructions to award benefits for the relevant period at issue." *Id*. at PageID# 709.

### III. LEGAL STANDARDS

#### A. Standard of Review

In reviewing applications for DIB, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), and to determine if the ALJ's factual findings are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). Following review of the record, a court "shall have power to enter, upon the pleadings and transcript of the record, a judgment afirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Sentence 4, 42 U.S.C. § 405(g). However, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Pededworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citation and quotation omitted); *see A.B. on Behalf of Y.F. v. Colvin,* 166 F. Supp. 3d 512, 518 (D.N.J. 2016).

Because the parties agree that the decision of the Commissioner should be reversed, the Court will address only the issues presented by the parties in connection with the *Motion to Remand* and, in particular, the terms of remand. The Court expresses no opinion on whether, if asked to review the Commissioner's decision in the first instance, the Court would conclude that the Commissioner's decision enjoys substantial support in the record.

#### B. Sequential Evaluation Process

Whether a claimant is disabled for purposes of DIB is determined through a five-step evaluation process. 20 C.F.R. § 404.1520. That process requires the Commissioner to consider,

in sequence, (1) whether a claimant is engaging in substantial gainful activity, (2) has an impairment or combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals any impairment listed in 20 C.F.R. Pt 404, Subpt. P, App'x 1, (4) has the RFC to return to her past work and, if not, (5) whether she can perform other work that exists in substantial numbers in the national economy. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing *Smith v. Comm'r of Soc. Sec.,* 631 F.3d 632, 634 (3d Cir. 2010)).

## IV. THE ALJ'S DECISION

The ALJ found, at step one of the sequential evaluation process, that Plaintiff—who meets the insured status requirement of the Social Security Act for DIB through December 31, 2024—had not engaged in substantial gainful activity since her alleged disability onset date of July 21, 2019. R. 18. At step two, the ALJ found that Plaintiff's cervical and lumbar spine degenerative disc disease, asthma, bipolar disorder, panic attack disorder, and PTSD were severe impairments. R. 19. The ALJ also found that Plaintiff's sciatica, migraine headaches, and history of substance abuse in remission were not severe. *Id*. At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that meets or medically equals the severity of any listed impairment. *Id.* In particular, the ALJ evaluated Plaintiff's back impairments by reference to Listing 1.16, which addresses lumbar spinal stenosis resulting in compromise of the *cauda equina*. The ALJ specifically found that Plaintiff's impairments neither meet nor equal that Listing because, in pertinent part, the evidence failed to satisfy the

requirements of Listing 1.16D.[4] At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> [S]he can stand/walk up to 6 hours per day but no more than 1 hour at a time. She would then need to sit or shift positions for up to 5 minutes per hour, while remaining on task. She cannot climb ropes, ladders or scaffolds or work heights. She cannot operate dangerous machinery (defined as machines that cut or shear). She can only occasionally stoop. She is limited to no more than frequent handling with the right non-dominant upper extremity. She can only occasionally kneel. She must avoid concentrated exposure to dust, fumes, pulmonary irritants, and temperature extremes. She would be limited to low stress work (defined as unskilled work involving simple, routine tasks, having no strict production quotas).

R. 21-22. The ALJ also found that this RFC precluded the performance of Plaintiff's past relevant work as a residential caregiver and assistance therapy aide. R. 26. At step five and considering Plaintiff's RFC for a limited range of light work and her vocational profile, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs existed in the national economy that Plaintiff could perform despite her lessened capacity. R. 27. The

---

[4] Listing 1.16D requires the following:

> D. Impairment-related Physical Limitations:
>
> Individuals must have a documented impairment-related physical limitation of musculoskeletal functioning that has lasted or is expected to last for a continuous period of at least 12 months. In addition, medical documents must establish one of the following:
>
> 1. Medical Need for Assistive Devices: A documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands.
>
> 2. Inability to Use One Upper Extremity: An inability to independently initiate, sustain, and complete work-related activities involving fine and gross movements using one upper extremity, along with a documented medical need for a one-handed assistive device or a wheeled and seated mobility device involving the use of one hand.

ALJ therefore concluded that Plaintiff was not disabled from July 21, 2019, her alleged disability onset date, through September 29, 2021, the date of the ALJ's decision. R. 28.

V.      DISCUSSION

    A.      **Medical Opinions and Evidence**

As noted above, Plaintiff originally asked that the decision of the Commissioner be reversed pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that the Court remand the matter to the Commissioner for "reassessment" of Plaintiff's RFC, of the opinions of Drs. Lam, Goldbas, and Briski, and of Plaintiff's subjective complaints, and, if warranted, for new vocational testimony, and to "issue a new decision based on substantial evidence and proper legal standards." *Plaintiff's Brief*, ECF No. 20, PageID# 651.[5] However, in opposition the Commissioner's motion to remand the matter for further administrative fact finding, Plaintiff now relies on the opinions of Drs. Lam, Goldbas, and Briski.

In formulating Plaintiff's RFC, the ALJ found only "partially persuasive," R. 25, the opinion of Dr. Lam, who conducted a consultative orthopedic examination of Plaintiff in December 2019. R. 425-34. Dr. Lam observed that Plaintiff had an unsteady gait, R. 428, 434, and used a cane, R. 429. He opined that Plaintiff required a cane for ambulation and support. R. 428. The ALJ explained that she did not include in the RFC a limitation regarding the use of an assistive device, despite Dr. Lam's opinion and despite Plaintiff's testimony that she had been prescribed a cane and was in fact using a cane during Dr. Lam's consultative examination, "because it is not support by the preponderance of the evidence, including treating provider APN Vitale's examination findings of unremarkable gait and station, and normal range of motion,

---

[5] Plaintiff also originally requested remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) for consideration of new and material evidence. Plaintiff does not appear to pursue that request.

muscle strength, and tone." R. 25-26. In making this finding, the ALJ expressly referred to the October 2019 treatment notes of Mary Vitale, APN, one of Plaintiff's treating providers, finding that Plaintiff had a normal range of motion, normal muscle strength and tone, and an unremarkable gait and station. R. 379. *See also* R. 384 (reflecting Nurse Vitale's similar findings in September 2019).

The ALJ also considered the 2020 opinions of state agency physicians Drs. Goldbas and Briski, who reviewed the record and who both opined, in pertinent part, that Plaintiff was limited to sedentary work, could stand or walk for a total of two hours, and could sit for a total of about six hours in an eight-hour workday. R. 67-68, 77. The ALJ found those opinions only "partially persuasive, as they are more restrictive than indicated by the objective and treating evidence as it relates to the claimant's capacity for exertional activity. . . ." R. 26. According to Plaintiff, the opinions of Drs. Goldbas and Briski, "*if credited*," *Response in Opposition*, ECF No. 27, PageID# 710 (emphasis added), would mandate remand for an award of benefits because the Medical-Vocational Guidelines direct a finding of disability for a claimant with Plaintiff's vocational profile and age at the time the ALJ issued her decision. *See* 20 C.F.R. Pt 404, Subpt. P, App'x 2, Rule 201.10. Plaintiff also characterizes Dr. Lam's opinion as "consistent with the other evidence of record, including the opinions of Drs. Goldbas and Briski. . . the MRI evidence of record and the findings of Dr. Qian, a pain specialist." *Response in Opposition*, ECF No. 27, PageID# 714.

As Plaintiff herself observes, a finding of disability as of the date on which Plaintiff turned 50 years old would be required only if the opinions of the reviewing state agency physicians were "*credited.*" *Id*. at PageID# 710 (emphasis added). However, the ALJ did not fully credit those opinions, nor did she fully credit the opinion of Dr. Lam, because she found

that those opinions were inconsistent with other evidence in the record. R. 26. In making this finding, the ALJ expressly referred to the conflicting evidence reflected in the treatment notes of Nurse Vitale, one of Plaintiff's treating providers. *Id*. This was not, in theory, an improper comparison, because the Commissioner's regulation applicable to Plaintiff's claim, 20 C.F.R. § 404.1520c, provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Notably, Plaintiff's responses to the Commissioner's motion make no mention of Nurse Vitale's treatment notes. *See generally Response in Opposition*, ECF No. 27; *Surreply*, ECF No. 34.

The MRI to which Plaintiff refers was administered in June 2018 and reflects central canal or neural foraminal stenosis, and disc bulge without focal herniation of the cervical and lumbar spines. R. 477-80. In July 2018, Sascha Qian, M.D., Plaintiff's treating pain specialist to whom Plaintiff also refers, noted an antalgic gait and deficits in range of motion of the lumbar spine on flexion and extension, and the doctor commented that Plaintiff was unable to perform heel and toe walking due to weakness. R. 484-85. Dr. Qian recommended steroid injections at L5-S1 and prescribed pain medication. R. 485-86. However, both the MRI evidence and Dr. Qian's treatment notes predate, by more than one year, Plaintiff's alleged disability onset date of July 2019 and Nurse Vitale's treatment notes referring to a normal range of motion, normal muscle strength and tone, and an unremarkable gait and station. R. 379, 384. The MRI evidence and Dr. Qian's treatment notes do not definitively mandate a finding of disability as of July 21, 2019.

### B. Partial Hospitalization

Plaintiff also urges remand with directions for the granting of benefits based on her alleged participation in a partial care or hospitalization program beginning on November 25, 2019. *Response in Opposition*, ECF No. 27, PageID# 710. Plaintiff contends that this program "would preclude her ability to perform sustained work activities, 8 hours a day, five days of [sic] week." *Id*. (citing S.S.R. 96-8p, 1996 WL 374184 (July 5, 1996)[6]). It follows, Plaintiff argues, that the Court should remand the matter for an award of benefits beginning at least on November 25, 2019.

The record in this action reflects that, in November 2019, Imtiazuddin Siddiqui, M.D., evaluated Plaintiff for admission to a partial care program and diagnosed Plaintiff with PTSD, in addition to her previous diagnosis of bipolar disorder I with depression, moderate. R. 456-59. In January 2020, Dr. Siddiqui stated that Plaintiff is "psychiatrically disabled" and is "[a]ttending [a] partial care program." R. 435. Moreover, Plaintiff testified at the administrative hearing before the ALJ that she attends "psychotherapy sessions" once per week and "New Bridge Services" four days per week. R. 55. It does not appear that the ALJ considered this evidence as impacting Plaintiff's ability to work on a regular and continuing basis. This evidence is significant, however, because the vocational expert testified that an individual who is off-task 10% of the workday could not sustain substantial gainful employment. R. 59.

Participation in a partial hospitalization program does not alone mandate a finding of disability. *See, e.g., Mathis v. Astrue*, 2014 WL 7149465, *7 (D. Del. Dec. 12, 2014) (admission

---

[6] S.S.R. 96-8p defines a claimant's RFC as "an assessment of an individual's ability to do sustained work related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

to program for only 12 days). In the case presently before this Court, Plaintiff does not describe the length or scheduling of her mental health treatment nor has she established that her attendance at weekly psychotherapy sessions and at "New Bridge Services" four days per week would preclude work on a "regular and continuing basis" within the meaning of S.S.R. 96-8p. In even the case upon which Plaintiff relies, *Barclay v. Comm'r of Soc. Sec.*, 2016 WL 5468166, *3 (W.D. Pa. Sept. 29, 2016), the court remanded the matter to the Commissioner for further fact finding in light of the ALJ's failure to consider evidence regarding the plaintiff's participation in a long-term partial hospitalization program:

> . . . [I]t is not apparent whether the ALJ considered Plaintiff's partial hospitalization when determining the seriousness of her impairments or when evaluating her credibility, nor is it apparent whether he considered her partial hospitalization in determining whether she was able to work during the time that she was participating in the program. Thus, because the ALJ did not address this significant part of Plaintiff's mental health treatment, the Court cannot find that the ALJ's RFC is supported by substantial evidence.

*Id*. at *4.[7] The relatively scant record on this issue in this action simply does not clearly establish that Plaintiff's participation in a partial care or hospitalization program would preclude substantial and sustained work activity on her part. A finding by this Court of disability on this basis is unwarranted.

The record in this action unquestionably presents conflicting evidence on some issues and, on other issues, evidence that is insufficient to establish disability. As the ALJ noted, Dr. Lam's opinion is arguably inconsistent with Nurse Vitale's findings; as even Plaintiff recognizes, the opinions of the reviewing state agency physicians would mandate a finding of disability under the Medical-Vocational Guidelines only if those

---

[7] The parties in *Barclay* agreed that the plaintiff in that action had missed scheduled sessions during the relevant period of partial hospitalization, and that not all sessions lasted a full six hours.

opinions are "credited." *Response in Opposition*, ECF No. 27, PageID# 710. Moreover, the effect of Plaintiff's participation in a partial care or hospitalization program requires further clarification and consideration. All these issues thus require resolution by further fact finding. *See Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence. . . . [t]he trier of fact has the duty to resolve that conflict.'")(quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). That duty must be carried out by the Commissioner, not by this Court. *See Zied v. Astrue*, 347 Fed. Appx. 862, 865 (3d Cir. Oct. 9, 2009) ("[A] district court has no fact-finding role in reviewing social security disability cases.") (citing *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984) ("[T]he district courts have no fact-finding role in Social Security cases. . . .")). As then-Judge Alito observed, the Social Security Act

> creates a scheme in which a district court may conduct a restricted review of the [Commissioner's] findings and may remand a case for new findings, but this scheme makes no provision for a district court to make any findings of its own.

*Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir. 1993).

In short, the Court concludes that the matter must be remanded to the Commissioner, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further administrative proceedings, including additional fact finding by the Commissioner.

## VI.  SCOPE OF REMAND

The parties agree that Plaintiff filed a subsequent application for DIB, which was granted on April 1, 2023, with a finding of disability as of September 30, 2021—*i.e.*, the day after the ALJ's September 29, 2021, unfavorable decision on Plaintiff's original application. *See Notice*, attached to *Plaintiff's Brief*, ECF No. 20-1. In her original response to the Commissioner's

motion, Plaintiff asked that, if this Court remands the matter to the Commissioner for further administrative fact finding, "the court issue specific directives to address all contentions of error raised, including a limitation on the scope of the period under consideration on remand, to the period from July 21, 2019, until September 29, 2021, and the opportunity to testify and present evidence at a hearing on remand." *Response in Opposition*, ECF No. 27, PageID# 709. In his *Reply*, ECF No. 31, the Commissioner complained that Plaintiff's requested limitation of the period under review would prevent the Commissioner from applying proper procedures governing the reopening of claims. *Id*. at PageID# 740 (citing HALLEX I-1-10-55). In her *Surreply*, ECF No. 34, Plaintiff explains that her request is intended only to assure "that the remand instructions should be limited to the decision before this Court, which denied her claim before the subsequent allowance," and that her request in this regard "actually supports the agency's ability to review the subsequent allowance without any restraint." *Id*. at PageID# 758. It therefore appears that the parties agree on the scope of remand.

## VII.  CONCLUSION

**WHEREUPON** the Court **GRANTS** the *Motion to Remand*, ECF No. 26. The Court **REVERSES** the Commissioner's decision and **REMANDS** the matter to the Commissioner pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further proceedings, including further fact finding. Specifically, on remand, the Commissioner is authorized to obtain medical expert evidence; to further consider the opinion evidence in the record, including the opinions of Doctors Lam, Goldbas, and Briski; to consider Plaintiff's RFC and whether the use of an assistive device is medically necessary and whether Plaintiff's mental health treatment impacts her ability to engage in work on a regular and continuing basis; if necessary, to obtain supplemental vocational expert evidence; and to issue a new decision.

The Court will issue a final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

February 26, 2024                                  *s/ Norah McCann King*
                                                   Norah McCann King
                                                   United States Magistrate Judge